**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

|  |  |
|---|---|
| VERTIV CORPORATION,<br><br>              Plaintiff,<br><br>v.<br><br>VALTRUS INNOVATIONS LIMITED,<br><br>              Defendant. | Civil Action No.  3:24-cv-1152<br><br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Vertiv Corporation, ("Vertiv"), for its Original Complaint against Defendant, Valtrus Innovations Limited ("Valtrus"), alleges as follows:

**NATURE OF THE ACTION**

1.       This is an action for a declaratory judgment of non-infringement of United States Patent Nos. 6,718,277 ("the '277 Patent"), 6,854,287 ("the '287 Patent"); 6,862,179 ("the '179 Patent"); 7,031,870 ("the '870 Patent"); and 7,339,490 ("the '490 Patent") (collectively, "the Patents-in-Suit" ) arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, including Title 35, United States Code.

2.       This action arises from Valtrus' ongoing campaign to interfere with Vertiv's relationship with its valued customers by aggressively and serially pursuing unfounded and false claims of patent infringement of the Patents-in-Suit in letters and by filing lawsuits based on the customers' use of Vertiv data center cooling, control and sensor products.

3.      Vertiv's products cannot infringe the Patents-in-Suit because the products do not practice the Patents-in-Suit asserted by Valtrus against its customers. The infringement assertions against Vertiv's customers are therefore baseless and unjustified.

4.      Vertiv seeks relief resolving the controversy between the real parties in interest, Valtrus and Vertiv, to protect its relationships with its many customers and to remove the uncertainty and false accusations of patent infringement against its products.

## PARTIES AND BACKGROUND

5.      Vertiv is an American multi-national publicly traded corporation that is incorporated in Delaware and has its principal place of business at 505 N. Cleveland Ave., Westerville, OH 43082 in Franklin County. Vertiv is a provider of critical infrastructure and services for data centers and related facilities.

6.      Intellectual property is important to Vertiv. Vertiv continually invests in research and development and has received hundreds of U.S. patents and thousands of patents globally for its innovations.

7.      Vertiv also values its relationships with its customers. Part of Vertiv's success is standing behind its products and services. One way that Vertiv stands by its products is through indemnity agreements.

8.      Upon information and belief, Valtrus is an Irish entity duly organized and existing under the laws of the Republic of Ireland. The address of the registered office of Valtrus is:  The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

9.      Upon information and belief, Valtrus does not have any employees who live or work within the United States of America.

10.     There are direct flights from Dublin, Ireland to Dallas-Fort Worth International Airport.

11.     On information and belief, Valtrus' business purpose is as "the owner of an extensive portfolio of patents originating from Hewlett Packard Enterprise Company [HPE]. Valtrus' portfolio covers a range of products and technologies including servers, cloud and data centre management, memory, processors, WLAN, network analytics, power and many more related technologies. The portfolio includes patents whose use are ubiquitous in these areas. Valtrus is focused on licensing these patents to established players and new entrants in the applicable market." *See* www.valtrusinnovations.ie.

12.     Upon information and belief, Valtrus does not make, use, or offer for sale any products in the United States.

13.     Upon information and belief, Valtrus' activities in the United States relate only to the enforcement and licensing of its patent portfolio.

14.     Upon information and belief, none of the named inventors on the Patents-in-Suit is currently or ever has been a Valtrus employee.

15.     As part of its patent enforcement efforts, Valtrus sued Google LLC for patent infringement in the Northern District of Texas in the case *Valtrus Innovations Ltd. v. Google LLC*, 3:22-cv-00066, which is currently pending.

16.     In 2023 and 2024, Valtrus also sued:

- SAP America, Inc. et al, 2:24-cv-00021;

- AT&T Inc. et al, 2:23-cv-00443;

- T-Mobile USA, Inc. et al, 2:23-cv-00444; and

- Verizon Communications Inc. et al, 2:23-cv-00445,

all in the Eastern District of Texas and on patents that are not the Patents-in-Suit in this controversy.

17.     In 2024, Valtrus filed lawsuits against Vertiv's direct customers alleging patent infringement of the Patents-in-Suit against:

- Digital Realty Trust, Inc. and Digital Realty Trust, L.P. (collectively, "Digital Realty"), 2:24-cv-00139-JRG;

- Dawn Acquisitions LLC (d/b/a Evoque Data Center Solutions), 2:24-cv-00142-JRG;

- CyrusOne, LLC, 2:24-cv-00259-JRG; and

- NTT Data Services, LLC et al., 2:24-cv-00361-JRG

all in the Eastern District of Texas and based on their use of Vertiv products.

18.     Valtrus' infringement claim charts for the Patents-in-Suit refer extensively to technical product information from brochures, user manuals, and web sites for Vertiv products. *See* e.g., Exhibit F (Complaint against CyrusOne in the Eastern District of Texas with claim charts for the Patents-in-Suit based on its use of Vertiv products).

19.     As the purported support for its infringement assertions involving Vertiv products, Valtrus relies on features and methodologies provided and executed by Vertiv products in their normal modes of operation, as reflected in the Vertiv product information cited throughout Valtrus' claim charts.  For example, one of Valtrus' allegations is that CyrusOne infringes because it uses "Vertiv and Liebert cooling in its U.S. data centers to control atmospheric conditions. Liebert's cooling units are controlled, for example, by Liebert's iCOM and/or iCOM-S Intelligent Communication and Monitoring system…"  Exhibit F (Valtrus Complaint against CyrusOne, Exhibit 8, page 6).

20.     Liebert is a brand name for some Vertiv products.

21.    In 2024, Valtrus's litigation counsel, Matthew Berkowitz, sent letters on behalf of Valtrus to at least ten data center corporations accusing those companies of infringing one or more of the Patents-In-Suit based on their use of Vertiv products and enclosing substantially the same claim charts for the Patents-In-Suit as in the currently pending lawsuits involving those patents in the Eastern District of Texas.

22.    The claim charts attached to Mr. Berkowitz's letters allege infringement of the Patents-in-Suit based on the use of Vertiv's products and the features and operations of those products described in Vertiv's product literature. The letters implicitly threaten litigation by referencing the case numbers for the litigation Valtrus initiated against Digital Realty and Evoque, setting a deadline for the recipient to agree to meet to discuss a license, and stating that Valtrus "reserves all rights" should the recipient decline such a meeting.

23.    At least three of those letters were sent to addresses in Dallas, TX within this District. For example, Mr. Berkowitz sent a patent infringement notice letter to CyrusOne's General Counsel at its place of business in Dallas, TX on behalf of Valtrus dated March 29, 2024, alleging infringement of and offering a license to the Patents-in-Suit. *See* Exhibit G.

24.    Upon information and belief, Valtrus' patent infringement notice letters also copied its licensing agent, Patent Platform Services LLC on the letters.  PPS has a principal place of business located at 7460 Warren Parkway, Suite 100, Frisco, Texas 75034, and has several employees who reside and work in Texas including in relation to services provided on behalf of Valtrus.

25.    On information and belief, several of the customers to whom Valtrus sent patent infringement notice letters own or operate data centers within the Northern District of Texas.

26.     On information and belief, some of the customers to whom Valtrus sent patent infringement notice letters do not own or operate any data centers within the Eastern District of Texas.

27.     On information and belief, at least one of the customers to whom Valtrus sent a patent infringement notice letter does not own or operate any data centers within Texas.

28.     On information and belief, Mr. Berkowitz and/or other representatives of Valtrus have initiated other correspondence and communications with Vertiv's customers, including customers having a presence in Texas, in furtherance of Valtrus's attempts to pressure those customers into purchasing a license to Valtrus' patents.

29.     On information and belief, Valtrus will continue sending patent infringement notice letters to additional Vertiv customers based on their use of Vertiv products in their data centers.

30.     On information and belief, Valtrus and/or one or more of the named defendants intend to seek discovery from Vertiv about the Vertiv products that Valtrus alleges are infringing in the Eastern District of Texas cases against Digital Realty, Evoque, CyrusOne, and NTT Data Systems.

31.     On information and belief, Valtrus would also seek to procure discovery from Vertiv about its products if it were to file additional lawsuits against any Vertiv customers based on the allegations in the many patent infringement notice letters it has already sent or is planning to send.

32.     Each additional customer lawsuit that Valtrus files will continue to increase the cost to Vertiv of complying with discovery requests and will disrupt Vertiv's business priorities as a provider of critical infrastructure and services for data centers and related facilities.

33.     As part of highly valuing its customer relationships, Vertiv has notified customers that have been sued that it will indemnify them from Valtrus' patent infringement allegations related to the use of Vertiv products and services.

34.     Vertiv desires to clear its name and its products of the allegations of patent infringement made by Valtrus against its customers and to alleviate the strain imposed on its customer relationships by these false accusations.

## JURISDICTION

35.     This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq.

36.     This court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1132, 1338(a), and/or 1367, 2201, and 2202.

37.     The amount in controversy exceeds $75,000. All the allegations contained herein form part of the same case or controversy.

38.     Upon information and belief, Valtrus owns all rights, title, and interest in the Patents-in-Suit.

39.     Upon information and belief, Valtrus possess all rights of recovery for allegations of infringement of the Patents-in-Suit.

40.     Personal jurisdiction over Valtrus is proper because Valtrus has purposefully directed activities or transactions to this forum and has performed acts purposefully availing itself of the privilege of conducting activities in this forum related to the subject matter of this case. Specifically, Valtrus acquired the patents that it owns from Hewlett Packard Enterprise Development, LP, and Hewlett Packard Enterprise Company, the former being a Texas limited partnership having its principal place of business in Houston, Texas. After acquiring ownership of

the patents, Valtrus sent letters to companies within this forum asserting allegations of patent infringement and offering a license to the Patents-in-Suit and/or seeking a meeting regarding licensing of the Patents-in-Suit. Valtrus chose a Texas-based licensing agent, PPS, to support and participate in its efforts to extract licensing revenue from Vertiv customers based on their use of Vertiv products. A substantial part of the events giving rise to the dispute occurred in this district, including when Valtrus contacted and threatened Vertiv's Dallas-based customers as well as customers who operate data centers located in this District.

41.     Personal jurisdiction is also proper because Valtrus has filed suit for patent infringement against Google in this District and consented to this Court's jurisdiction and convenience as a forum as part of its patent enforcement strategy.

42.     Valtrus has acknowledged that its purposeful activities subject it to the personal jurisdiction of Courts in the State of Texas. In particular Valtrus submitted a Declaration of its Managing Director, Angela Quinlan, in connection with the action *SAP America, Inc. v. Valtrus Innovations Ltd. et al*, 24-cv-54-GBW (D. Del. Jan. 15, 2024). *See* Exhibit H. The Quinlan Declaration acknowledges, inter alia, the numerous patent infringement lawsuits Valtrus has filed and is pursuing in the federal courts in Texas and the fact all of Valtrus' patents were acquired from Hewlett Packard Enterprises, which is based in Texas. *See id.* at ¶¶ 6, 12. Valtrus, via the Quinlan Declaration, further acknowledged, agreed and consented that jurisdiction over Valtrus is proper in Texas. *See id*. at ¶ 13.

43.     Valtrus has availed itself of the rights and benefits of the laws of Texas. It has conducted business relating to the licensing and enforcement of its patents in Texas, directly and through Patent Platform Services and/or other agents, and it has systematic and continuous business contacts with Texas through its patent enforcement and licensing activities.

44.     To the extent that Valtrus lacks sufficient contacts with any state, Vertiv alleges in the alternative that personal jurisdiction over Valtrus is also proper under Fed. R. Civ. Pro. 4(k)(2) in this District because this case relates to Valtrus' assertions of patent infringement and therefore arises under federal law; Valtrus is an Irish corporation; and Valtrus has sufficient contacts with the United States as a whole, as it is directing its patent enforcement efforts toward various United States entities.   For example, Valtrus has pursued judicial patent enforcement in this forum by filing suit in at least  *Valtrus Innovations Ltd. v. Google LLC*, 3:22-cv-00066 (N.D. Tex. Jan. 10, 2022); *Valtrus Innovations Ltd. v. SAP America, Inc. et al*, 2:24-cv-00021-JRG (E.D. Tex. Jan. 15, 2024); *Valtrus Innovations Ltd. v. AT&T Inc. et al*, 2:23-cv-00443-JRG (E.D. Tex. Sept. 27, 2023); *Valtrus Innovations Ltd. v. Digital Realty Trust, Inc. et al*, 2:24-cv-00139-JRG (E.D. Texas Feb. 27, 2024); *Valtrus Innovations Ltd. v. Dawn Acquisitions LLC (d/b/a Evoque Data Center Solutions)*, 2:24-cv-00142-JRG (E.D. Tex. Feb. 27, 2024); *Valtrus Innovations Ltd. v. T-Mobile USA, Inc. et al*, 2:23-cv-0444-JRG (E.D. Tex. Sept.27, 2023); *Valtrus Innovations Ltd. v. Verizon Communications Inc. et al*, 2:23-cv-0445-JRG (E.D. Tex. Dec. 4, 2023); *Valtrus Innovations Ltd. v. CyrusOne, LLC*, 2:24-cv-00259-JRG (E.D. Tex. April 17, 2024); and *Valtrus Innovations Ltd. v. NTT Data Services, LLC et al*., 2:24-cv-00361-JRG (E.D. Tex. May 14, 2024).

## **VENUE**

45.     Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the dispute occurred in this District and because Valtrus is subject to personal jurisdiction in this District. Venue is also proper because Valtrus is a foreign Company and may be sued in any judicial district in the United States in which Valtrus is subject to the Court's personal jurisdiction.   Valtrus' choice of this District for its currently pending patent

litigation against Google and the presence of an international airport with direct flights from Valtrus' home city shows that this is also a convenient forum for Valtrus.

## FACTS

### THE PATENTS AT ISSUE

46.     The '277 Patent entitled "Atmospheric Control Within a Building," names Ratnesh Sharma as the inventor and states an issue date of April 6, 2004. Attached as Exhibit A is a true and correct copy of the '277 Patent.

47.     The '277 Patent is directed to a method and system for controlling atmospheric conditions within a building.

48.     On information and belief, Valtrus is the assignee of all right, title, and interest in the '277 Patent.

49.     The '277 Patent has expired.

50.     The '287 Patent entitled "Cooling System," names Chandrakant D. Patel and Cullen E. Bash as the inventors and states an issue date of February 15, 2005. Attached as Exhibit B is a true and correct copy of the '287 Patent.

51.     The '287 Patent is directed to a system, method, and computer readable storage medium for cooling a room configured to house a plurality of computer systems.

52.     On information and belief, Valtrus is the assignee of all right, title, and interest in the '287 Patent.

53.     The '287 Patent has expired.

54.     The '179 Patent entitled "Partition for Varying the Supply of Cooling Fluid," names Abdlmonem H. Beitelmal and Chandrakant D. Patel as the inventors and states an issue date of March 1, 2005. Attached as Exhibit C is a true and correct copy of the '179 Patent.

55.     The '179 Patent is directed to a method, system, and apparatus for cooling a plurality of racks in a data center.

56.     On information and belief, Valtrus is the assignee of all right, title, and interest in the '179 Patent.

57.     The '179 Patent has expired.

58.     The '870 Patent entitled "Data Center Evaluation Using Air Re-Circulation Index," names Ratnesh K. Sharma, Cullen E. Bash, and Chandrakant D. Patel as the inventors and states an issue date of April 18, 2006. Attached as Exhibit D is a true and correct copy of the '870 Patent.

59.     The '870 Patent is directed to a system, method, computational fluid dynamics tool, and a computer readable storage medium for evaluating one or more components in a data center.

60.     On information and belief, Valtrus is the assignee of all right, title, and interest in the '870 Patent.

61.     The '490 Patent entitled "Modular Sensor Assembly," names David Allen Moore, Rober Allen Pereira, Ratnesh K. Sharma, and Cullen E. Bash as the inventors and states an issue date of March 4, 2008. Attached as Exhibit E is a true and correct copy of the '490 Patent.

62.     The '490 Patent is directed to a modular system assembly for sensing a condition at a computer rack, a sensor system, and a computer rack system.

63.     On information and belief, Valtrus is the assignee of all right, title, and interest in the '490 Patent.

## EXISTENCE OF AN ACTUAL CONTROVERSY

64.     There is an actual controversy within the jurisdiction of this Court under 28 U.S.C. §§ 2201 and 2202.

65.     On information and belief, Valtrus has provided at least ten of Vertiv's customers with patent infringement notice letters and claim charts purporting to show how the use of Vertiv's products infringes at least one claim of each of the Patents-in-Suit. The claim charts also implicitly contain allegations of direct and indirect infringement (jointly and contributorily) against Vertiv.

66.     Valtrus has also filed four patent infringement suits based on allegations that using Vertiv products infringes at least one claim of each of the Patents-in-Suit. The claim charts in each of those cases also implicitly contain allegations of direct and indirect infringement (jointly and contributorily) against Vertiv.

67.     Vertiv values its customer relationships and is contractually bound to indemnify and defend customers against patent infringement claims related to the use of Vertiv products pursuant to various contracts and sales agreements.

68.     On information and belief, Valtrus has also filed at least eight patent infringement lawsuits in 2023 and 2024, making clear that filing lawsuits is a major strategy of its only U.S. business, the enforcement of its patents.

69.     Valtrus' assertions of patent infringement against Vertiv's customers and products have created uncertainty in Vertiv's relationships with its many customers and harmed its reputation in its industry. Vertiv understandably desires to clear this cloud of controversy and maintain its reputation.

70.     It is not in the substantial interest of justice or an efficient use of judicial resources for Vertiv to be forced to defend itself and its customers from Valtrus' unjustified patent

infringement claims serially and concurrently in suits against each customer individually in various forums of Valtrus' choice.

71.     Based on the foregoing, a justiciable controversy exists between Vertiv and Valtrus as to whether Valtrus' products, such as the Leibert cooling and iCOM control products and modular sensors, and services infringe the Patents-in-Suit.

72.     Absent a declaration of non-infringement for Vertiv's products that applies to all of its customers, Valtrus will continue to wrongfully allege that Vertiv's products and services infringe the Patents-in-Suit, will continue to contact and sue customers in repetitive cases in various forums increasing the cost of defense to Vertiv and its customers, and will, thereby, cause Vertiv irreparable injury and damage.

**COUNT I**
**(Declaratory Judgment of Non-Infringement of the '277 Patent)**

73.     Vertiv repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein.

74.     Valtrus has asserted that it is the owner of the '277 Patent.

75.     Valtrus has alleged that products of Vertiv, including Liebert cooling units and Liebert iCOM and iCOM-S control systems, infringe the '277 Patent.

76.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Vertiv's products infringe any claims of the '277 Patent to warrant the issuance of a declaratory judgment of non-infringement.

77.     A judicial declaration is necessary and appropriate so that Vertiv may ascertain its rights regarding its Liebert cooling and iCOM products and the '277 Patent.

78.     Vertiv products (including Liebert cooling units and Liebert iCOM and iCOM-S control systems) do not infringe the '277 Patent and Vertiv has not contributed to or induced

infringement of the '277 Patent because Vertiv products do not practice or embody the limitations of the claims of the '277 Patent. By way of example, neither Vertiv nor its Liebert cooling units and/or Liebert iCOM and iCOM-S control system products has infringed or infringes the '277 Patent at least because the products do not practice a method of controlling atmospheric conditions within a building upon sensing atmospheric parameters at locations inside the building involving the steps of "generating an empirical atmospheric map from the results of said sensing step using software for processing input from said sensing step and for producing output in the form of said empirical atmospheric map"; "comparing said empirical atmospheric map to a template atmospheric map"; and "identifying pattern differential between said empirical and template atmospheric maps" as required by independent claim 1 of the '277 Patent.

79.     As another example, independent claim 12 is directed to a method of cooling a data center involving supplying cooling fluid to cool equipment within the data center and sensing temperature at locations within the data center. The method of claim 12 further requires "generating an empirical thermal map of said data center from the results of said sensing step using software for processing input from said sensing step and for producing output in the form of said empirical thermal map"; "comparing said empirical thermal map to a template thermal map"; and "identifying pattern differentials between said empirical and template thermal maps." Vertiv's products, including its Liebert cooling units and Liebert iCOM and iCOM-S control system products, do not practice these steps of claim 12 of the '277 Patent.

80.     As another example, independent claim 22 is directed to a system for controlling atmospheric conditions within a building that includes means for sensing at least one atmospheric parameter at locations inside the building. The system of claim 22 further requires "means for generating an empirical atmospheric map from said means for sensing, wherein the means for

generating comprises software for processing input from said means for sensing and for producing output in the form of said empirical atmospheric map"; "means for comparing said empirical atmospheric map to a template atmospheric map"; and "means for identifying characteristics of pattern differentials between said empirical and template atmospheric maps." Vertiv's products, including its Liebert cooling units and Liebert iCOM and iCOM-S control system products, do not meet these limitations of claim 22 of the '277 Patent.

81.     For at least these reasons, Vertiv's products, including its Liebert cooling units and Liebert iCOM and iCOM-S control systems, do not infringe the '277 Patent.

82.     Vertiv is entitled to a declaratory judgment that its products, including its Liebert cooling units and Liebert iCOM and iCOM-S control systems, have not infringed and do not infringe, either directly or indirectly, literally under the doctrine of equivalents, any claim of the '277 Patent.

**COUNT II**
**(Declaratory Judgment of Non-Infringement of the '287 Patent)**

83.     Vertiv repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein.

84.     Valtrus has asserted that it is the owner of the '287 Patent.

85.     Valtrus has alleged that products of Vertiv, including Liebert cooling units (both refrigerant-based and chilled water systems), and Liebert iCOM control systems, infringe the '287 Patent.

86.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Vertiv's products infringe any claims of the '287 Patent to warrant the issuance of a declaratory judgment of non-infringement.

87.     A judicial declaration is necessary and appropriate so that Vertiv may ascertain its rights regarding its Liebert cooling and iCOM products and the '287 Patent.

88.     Vertiv products (including Liebert cooling units and Liebert iCOM control systems) do not infringe the '287 Patent and Vertiv has not contributed to or induced infringement of the '287 Patent because Vertiv products do not practice or embody the limitations of the claims of the '287 Patent. By way of example, neither Vertiv nor its Liebert cooling units and/or Liebert iCOM control system products has infringed or infringes the '287 Patent at least because the products do not practice a method of cooling a room housing computer systems involving the steps of "supplying [a] plurality of heat exchanger units with cooling fluid from an air conditioning unit"; "cooling . . . received air through heat exchange with the cooling fluid in the plurality of heat exchanger units"; "controlling at least one of the temperature of said cooling fluid and said air delivery by said plurality of heat exchanger units to said room in response to said sensed temperatures at said one or more locations"; and "controlling . . . air delivery by said plurality of heat exchanger units [by] individually manipulating a mass flow rate of the cooling fluid supplied to each of the plurality of heat exchanger units" as required by independent claim 1 of the '287 Patent.

89.     As another example, independent claim 10 recites a system for cooling a room containing one or more computer systems housed in racks that requires "a plurality of heat exchanger units configured to receive cooling fluid through a cooling fluid line from an air conditioning unit for cooling the cooling fluid"; "a heat exchanger controller operable to control a supply of said cooling fluid to said plurality of heat exchanger units"; "an air conditioning unit controller configured to operate the air conditioning unit to vary the temperature of said cooling fluid delivered to the one or more locations in the room"; and "a plurality of pumps configured to

control cooling fluid delivery to respective ones of said plurality of heat exchanger units, wherein said heat exchanger controller is operable to control said plurality of pumps to thereby individually control the mass flow rate of cooling fluid delivered into each of the respective heat exchanger units." Vertiv's products, including its Liebert cooling units and Liebert iCOM control system products, do not meet these limitations of claim 10 of the '287 Patent.

90.    As another example, independent claim 14 recites a system for cooling a room containing one or more computer systems that requires "a plurality of heat exchanger units configured to receive cooling fluid through a cooling fluid line from an air conditioning unit for cooling the cooling fluid"; "a heat exchanger controller operable to control a supply of said cooling fluid to said plurality of heat exchanger units"; and "a plurality of valves configured to meter the flow of cooling fluid through each of said plurality of heat exchanger units positioned along respective cooling fluid lines generally upstream of respective heat exchanger units, wherein said heat exchanger controller is operable to individually control the mass flow rate of said cooling fluid through said plurality of valves." Vertiv's products, including its Liebert cooling units and Liebert iCOM control system products, do not meet these limitations of claim 14 of the '287 Patent.

91.    As another example, independent claim 16 recites a system for cooling computer systems housed in one or more racks maintained in a room that requires "means for receiving air from the room, said means for receiving air being located at a plurality of locations of the room"; "means for receiving cooling fluid from an air conditioning unit"; and "means for individually manipulating a mass flow rate of the cooling fluid supplied to the plurality of means for receiving air, wherein the means for individually manipulating varies the mass flow rate of cooling fluid supplied to each of the plurality of means for receiving air in substantially independent manners."

Vertiv's products, including its Liebert cooling units and Liebert iCOM control system products, do not meet these limitations of claim 16 of the '287 Patent.

92.     As another example, independent claim 20 recites computer readable storage medium programmed to implement a cooling method for a room configured to house computer systems and comprising instructions for "supplying a plurality of heat exchanger unit configured to receive air from the room and to deliver air to the room with cooling fluid from an air conditioning unit"; "cooling said received air through heat exchange with the cooling fluid in the plurality of heat exchanger units"; and "individually manipulating a mass flow rate of the cooling fluid supplied to the each of the plurality of heat exchanger units." Vertiv's products, including its Liebert cooling units and Liebert iCOM control system products, do not meet these limitations of claim 20 of the '287 Patent.

93.     For at least these reasons, Vertiv's products, including its Liebert cooling units and Liebert iCOM control systems, do not infringe the '287 Patent.

94.     Vertiv is entitled to a declaratory judgment that its products, including its Liebert cooling units and Liebert iCOM control systems, have not infringed and do not infringe, either directly or indirectly, literally under the doctrine of equivalents, any claim of the '287 Patent.

**COUNT III**
**(Declaratory Judgment of Non-Infringement of the '179 Patent)**

95.     Vertiv repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein.

96.     Valtrus has asserted that it is the owner of the '179 Patent.

97.     Valtrus has alleged that products of Vertiv, including Liebert cooling units and Liebert iCOM control systems, infringe the '179 Patent.

98.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Vertiv's products infringe any claims of the '179 Patent to warrant the issuance of a declaratory judgment of non-infringement.

99.     A judicial declaration is necessary and appropriate so that Vertiv may ascertain its rights regarding its Liebert cooling and iCOM products and the '179 Patent.

100.    Vertiv products (including Liebert cooling units and Liebert iCOM control systems) do not infringe the '179 Patent and Vertiv has not contributed to or induced infringement of the '179 Patent because Vertiv products do not practice or embody the limitations of the claims of the '179 Patent. By way of example, neither Vertiv nor its Liebert cooling units and/or Liebert iCOM control system products has infringed or infringes the '179 Patent at least because the products do not practice a method of cooling a plurality of racks in a data center involving the steps of "opening a controllable partition configured to vary a supply of cooling fluid within a zone of said data center, said zone including at least one associated rack of said plurality of racks"; and "manipulating said controllable partition to vary said supply of said cooling fluid to said zone in response to [a] sensed temperature being outside said predetermined temperature range" as required by independent claims 1 of the '179 Patent.

101.    As another example, independent claim 16 is directed to an apparatus for cooling a plurality of racks in a data center and requires "means for activating a cooling device and opening a controllable partition configured to vary a supply of cooling fluid within a zone of said data center, said zone including at least one associated rack of said plurality of racks" and "means for manipulating said controllable partition to vary said supply of said cooling fluid to said zone in response to [a] sensed temperature being outside said predetermined temperature range." Vertiv's

products, including its Liebert cooling units and Liebert iCOM control system products, do not meet these limitations of claim 16 of the '179 Patent.

102.     As another example, independent claim 27 of the '179 Patent is directed to a data center cooling system having a cooling device supplying cooling fluid to racks and a plenum in fluid communication with a fan of the cooling device for conveying the cooling fluid to the racks. Claim 27 further requires "a controllable partition located within said plenum, wherein pressure of said cooling fluid in said plenum is controlled by modulation of said partition." Vertiv's products, including its Liebert cooling units and Liebert iCOM control system products, do not meet this limitation of claim 27 of the '179 Patent.

103.     For at least these reasons, Vertiv's products, including its Liebert cooling units and Liebert iCOM control systems, do not infringe the '179 Patent.

104.     Vertiv is entitled to a declaratory judgment that its products, including its Liebert cooling units and Liebert iCOM control systems, have not infringed and do not infringe, either directly or indirectly, literally under the doctrine of equivalents, any claim of the '179 Patent.

**COUNT IV**
**(Declaratory Judgment of Non-Infringement of the '870 Patent)**

105.     Vertiv repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein.

106.     Valtrus has asserted that it is the owner of the '870 Patent.

107.     Valtrus has alleged that products of Vertiv, including Liebert cooling units and Liebert iCOM control systems, infringe the '870 Patent.

108.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Vertiv's products infringe any claims of the '870 Patent to warrant the issuance of a declaratory judgment of non-infringement.

109.     A judicial declaration is necessary and appropriate so that Vertiv may ascertain its rights regarding its Liebert cooling and iCOM products and the '870 Patent.

110.     Vertiv products (including Liebert cooling units and Liebert iCOM control systems) do not infringe the '870 Patent and Vertiv has not contributed to or induced infringement of the '870 Patent because Vertiv products do not practice or embody the limitations of the claims of the '870 Patent. By way of example, neither Vertiv nor its Liebert cooling units and/or Liebert iCOM control system products has infringed or infringes the '870 Patent at least because the products do not practice a method for evaluating one or more components in a data center involving the steps of "calculating indices of air re-circulation for the one or more heat dissipating devices based upon . . . detected [heat dissipating device] inlet temperatures, [heat dissipating device] outlet temperatures and supplied air temperatures"; "determining whether the indices of air re-circulation has changed in response to the varied flow field settings [of air delivered to one or more heat dissipating devices]"; and "evaluating the one or more components based upon changes in the indices of air re-circulation for the one or more heat dissipating devices at the various flow field settings" as required by independent claims 1 of the '870 Patent.

111.     As another example, independent claim 13 is directed to a computational fluid dynamics tool for evaluating components in a data center that includes a "modeling program . . . configured to calculate indices of air re-circulation of . . . one or more heat dissipating devices based upon the inlet and outlet temperatures of one or more heat dissipating devices and temperatures of air supplied by one or more CRAC units, the modeling program being further configured to calculate the indices of air re-circulation of the one or more heat dissipating devices at various flow field settings of air delivered to the one or more heat dissipating devices"; and "wherein the modeling program is further configured to evaluate the one or more components

based upon changes in the indices of air re-circulation of the one or more heat dissipating devices." Vertiv's products, including its Liebert cooling units and Liebert iCOM control system products, do not meet these limitations of claim 13 of the '870 Patent.

112.   As another example, independent claim 22 of the '870 Patent is directed to a system for evaluating one or more components in a data center having one ore heat dissipating devices and respective inlet and outlet temperature sensors and one or more computer room air conditioning units having supply air temperature sensors. The system of claim 22 further requires "a controller configured to calculate indices of air re-circulation for the one or more heat dissipating devices based upon temperatures detected by the inlet and outlet temperature sensors and the supply air temperature sensors at various volume flow field settings of air delivered to the one or more heat dissipating devices, wherein the controller is further configured to evaluate the one or more components in the data center based upon changes in the air re-circulation indices." Vertiv's products, including its Liebert cooling units and Liebert iCOM control system products, do not meet this limitation of claim 22 of the '870 Patent.

113.   As another example, independent claim 32 of the '870 Patent is directed to a system for evaluating one or more components in a data center having means for detecting inlet and outlet temperatures of one or more heat dissipating devices and means for detecting temperatures of air supplied by one or more computer room air conditioning units. The system of claim 32 further requires "means for calculating indices of air re-circulation for the one or more heat dissipating devices at various flow field settings of air delivered to the one or more heat dissipating devices"; and "means for evaluating the one or more components based upon the calculated indices of air re-circulation at the various flow field settings." Vertiv's products, including its Liebert cooling

units and Liebert iCOM control system products, do not meet these limitations of claim 32 of the '870 Patent.

114.     As another example, independent claim 37 of the '870 Patent recites computer readable storage medium containing one or more embedded computer programs implementing a method for evaluating one or more components in a data center and comprising instructions for "calculating indices of air re-circulation for the one or more racks at various flow field settings of air delivered to the one or more heat dissipating devices" and "evaluating the one or more components based upon the calculated indices of air re-circulation at the various flow field settings." Vertiv's products, including its Liebert cooling units and Liebert iCOM control system products, do not meet these limitations of claim 37 of the '870 Patent.

115.     For at least these reasons, Vertiv's products, including its Liebert cooling units and Liebert iCOM control systems, do not infringe the '870 Patent.

116.     Vertiv is entitled to a declaratory judgment that its products, including its Liebert cooling units and Liebert iCOM control systems, have not infringed and do not infringe, either directly or indirectly, literally under the doctrine of equivalents, any claim of the '870 Patent.

## COUNT FIVE
### (Declaratory Judgment of Non-Infringement of the '490 Patent)

117.     Vertiv repeats and realleges paragraphs 1 through 72 hereof, as if fully set forth herein.

118.     Valtrus has asserted that it is the owner of the '490 Patent.

119.     Valtrus has alleged that products of Vertiv, including Liebert cooling units and Liebert modular sensors, infringe the '490 Patent.

120.     As a result of the acts described in the preceding paragraphs, there exists a controversy of sufficient immediacy and reality regarding whether Vertiv's products infringe any claims of the '490 Patent to warrant the issuance of a declaratory judgment of non-infringement.

121.     A judicial declaration is necessary and appropriate so that Vertiv may ascertain its rights regarding its Liebert cooling units and modular sensor products and the '490 Patent.

122.     Vertiv products (including Liebert cooling units and Liebert modular sensors) do not infringe the '490 Patent and Vertiv has not contributed to or induced infringement of the '490 Patent because Vertiv products do not practice or embody the limitations of the claims of the '490 Patent. By way of example, neither Vertiv nor its Liebert cooling units and/or Liebert modular sensor products has infringed or infringes the '490 Patent at least because the products do not include a modular sensor assembly that comprises "an elongate flexible body, configured to attach to a computer rack"; and "a plurality of addressable sensors, disposed along the body and interconnected to a common connector wire" as required by independent claims 1 of the '490 Patent.

123.     As another example, independent claim 11 is directed to a sensor system that includes "a modular sensor assembly, having a flexible elongate body, attached to [a] computer rack"; and "a plurality of addressable sensors, disposed along the elongate body of the modular sensor assembly, and interconnected in parallel to a common connector wire, configured to independently measure an environmental condition in the immediate vicinity of the sensor." Vertiv's products, including its Liebert cooling units and Liebert modular sensor products, do not meet these limitations of claim 11 of the '490 Patent.

124.     As another example, independent claim 28 of the '490 Patent is directed to a computer rack system that includes "a modular sensor assembly, attached to the rack body,

comprising an elongate flexible sensor body having a plurality of addressable sensors connected in parallel to a common connector wire, each sensor being configured to generate a digital signal representative of an environmental condition"; and "a connector board, associated with the rack body, interconnected to the connector wire and to a central computer system configured to receive data from the plurality of sensors and to monitor environmental conditions associated with the rack." Vertiv's products, including its Liebert cooling units and Liebert modular sensor products, do not meet this limitation of claim 28 of the '490 Patent.

125.    For at least these reasons, Vertiv's products, including its Liebert cooling units and Liebert modular sensor products, do not infringe the '490 Patent.

126.    Vertiv is entitled to a declaratory judgment that its products, including its Liebert cooling units and Liebert modular sensor products, have not infringed and do not infringe, either directly or indirectly, literally under the doctrine of equivalents, any claim of the '490 Patent.

## JURY DEMAND

127.    Vertiv hereby demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Vertiv requests this Court to enter judgment in Vertiv's favor and against Valtrus as follows:

128.    A declaration that neither Vertiv nor its products have infringed or do infringe, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)) any claim of the Patents-in-Suit, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271;

129.    Injunctive relief restraining Valtrus and each of its officers, directors, agents, counsel, servants, employees, and all of persons in active concert or participation with any of them,

or successors and enjoining them from alleging, representing, threatening, or otherwise stating that Vertiv or Vertiv products or the activities of customers, manufacturers, users, importers, or sellers in relation to Vertiv's products infringes any claims of the Patents-in-Suit or from instituting or initiating any action or proceeding alleging infringement of any claims of the Patents-in-Suit against Vertiv or any customers, manufacturers, users, importers, or sellers of Vertiv's products;

130.    Declaring Vertiv as the prevailing party and this case as exceptional, and awarding Vertiv its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285;

131.    Ordering that Valtrus pay all reasonable attorneys' fees, expenses, and costs associated with this action; and

132.    Awarding such other and further relief as this Court deems just and proper.

Dated: May 14, 2024

**OF COUNSEL:**

Timothy P. Maloney (*pro hac forthcoming*)
Daniel J. Schwartz (*pro hac forthcoming*)
Allison Strong (*pro hac forthcoming*)
**NIXON PEABODY LLP**
70 West Madison, Suite 5200
Chicago, Illinois 60602
312-977-4400
tmaloney@nixonpeabody.com
djschwartz@nixonpeabody.com
astrong@nixonpeabody.com

Nicole Sims (TX Bar No. 24051343)*
**NIXON PEABODY LLP**
799 9th St. NW, Suite 500
Washington, DC 200001-5327
202-585-8337
nsims@nixonpeabody.com
*Admitted to practice only in Texas; supervised by a member of the firm who is admitted to the DC Bar.

Respectfully Submitted,

_/s/ William E. Davis, III_
William E. Davis, III
Texas Bar No. 24047416
**Davis Firm PC**
213 N. Fredonia Street, Suite 230
Longview, TX 75601
903-230-9090
bdavis@davisfirm.com

***Attorneys for Plaintiff Vertiv Corporation***